Justice ALITO, dissenting.
*2048 Justice THOMAS makes a valuable argument about the constitutionality of congressional subpoenas for a President's personal documents. In these cases, however, I would assume for the sake of argument that such subpoenas are not categorically barred. Nevertheless, legislative subpoenas for a President's personal documents are inherently suspicious. Such documents are seldom of any special value in considering potential legislation, and subpoenas for such documents can easily be used for improper non-legislative purposes. Accordingly, courts must be very sensitive to separation of powers issues when they are asked to approve the enforcement of such subpoenas.
In many cases, disputes about subpoenas for Presidential documents are fought without judicial involvement. If Congress attempts to obtain such documents by subpoenaing a President directly, those two heavyweight institutions can use their considerable weapons to settle the matter. See ante , at 2030 - 2031 (opinion of the Court) ("Congress and the President maintained this tradition of negotiation and compromise-without the involvement of this Court-until the present dispute"). But when Congress issues such a subpoena to a third party, Congress must surely appreciate that the Judiciary may be pulled into the dispute, and Congress should not expect that the courts will allow the subpoena to be enforced without seriously examining its legitimacy.
Whenever such a subpoena comes before a court, Congress should be required to make more than a perfunctory showing that it is seeking the documents for a legitimate legislative purpose and not for the purpose of exposing supposed Presidential wrongdoing. See ante , at 2031 - 2032. The House can inquire about possible Presidential wrongdoing pursuant to its impeachment power, see ante , at 2045 - 2047 (THOMAS, J., dissenting), but the Committees do not defend these subpoenas as ancillary to that power.
Instead, they claim that the subpoenas were issued to gather information that is relevant to legislative issues, but there is disturbing evidence of an improper law enforcement purpose. See 940 F.3d 710, 767-771 (CADC 2019) (Rao, J., dissenting). In addition, the sheer volume of documents sought calls out for explanation. See 943 F.3d 627, 676-681 (CA2 2019) (Livingston, J., concurring in part and dissenting in part).
The Court recognizes that the decisions below did not give adequate consideration to separation of powers concerns. Therefore, after setting out a non-exhaustive list of considerations for the lower courts to take into account, ante , at 2035 - 2036, the Court vacates the judgments of the Courts of Appeals and sends the cases back for reconsideration. I agree that the lower courts erred and that these cases must be remanded, but I do not think that the considerations outlined by the Court can be properly satisfied unless the House is required to show more than it has put forward to date.
Specifically, the House should provide a description of the type of legislation being considered, and while great specificity is not necessary, the description should be sufficient to permit a court to assess whether the particular records sought are of any special importance. The House should also spell out its constitutional authority to enact the type of legislation that it is contemplating, and it should justify the scope of the subpoenas in relation to the articulated legislative needs. In addition, it should explain why the subpoenaed information, as opposed to information available from other sources, is needed. Unless the House is required to make a *2049 showing along these lines, I would hold that enforcement of the subpoenas cannot be ordered. Because I find the terms of the Court's remand inadequate, I must respectfully dissent.

The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co. , 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.